UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
HANGZHOU ZHAOHU TECHNOLOGY CO.,
LTD.

        Plaintiff,

           -against-

22-cv-05878-CM

BOER TECH; and PROHEAR,

        Defendants.
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/4/2022

## DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

McMahon, J.:

        The Plaintiff's motion for a temporary restraining order is hereby DENIED.

**Facts**

        Plaintiff is a Chinese company that sells "Hearing Protectors" or "Muffs" (which, as all parties agree, are simply headphones) under the trademark "PROTEAR" on internet web sites. It has been engaged in this business in the United States since approximately 2011. It has a registered trademark, Reg. No. 5,241,109, covering use of the mark "PROTEAR" for, among other things, headphones, earphones, and earphone accessories. (*See* Dkt. No. 11-1).

        Defendants are so-called "internet stores" that sell ear protectors/headphones in competition with Plaintiff's product under the trade name "PROHEAR." The trademark "PROHEAR" is registered in both the United States (Reg. No. 5,744,318) and in the European Union ("EU") (No. 18 105 616) to an enterprise known as Hangzhou Johnson Tech Co., Ltd. ("Johnson Tech"), which manufactures the competing products. The United States Trademark Trial and Appeal Board ("TTAB") has issued an order cancelling Johnson Tech's U.S. mark on the ground that it is confusingly similar to Plaintiff's mark, which has priority. As a result, that mark will be cancelled on or about September 13 unless Johnson Tech appeals that decision to the Federal Circuit or to a United States District Court. (*See* Dkt. No. 1-3). Counsel for Defendants, who also represent non-party Johnson Tech, have indicated that Johnson Tech (which Plaintiff apparently intends to add as a defendant) will file some sort of claim in this lawsuit appealing the TTAB's decision.

        In a parallel proceeding in the EU seeking to nullify Plaintiff's mark in Europe (where Johnson Tech has priority of registration), the European Union Intellectual Property Office ("EUIPO") issued a decision on April 28, 2021, in which it declared the mark "PROTEAR"

"invalid for the goods found to be similar of those of the earlier trade mark [PROHEAR]"; such goods include "ear plugs and ear muffs for protection against noise." (*See* Dkt. No. 22-5)

Although Plaintiff represented to the Court, when applying for an *ex parte* temporary restraining order ("TRO"), that it was unaware of who was behind the two internet stores it had sued, in fact Plaintiff was fully aware that (1) Johnson Tech manufactured the hearing protectors sold on the two internet stores it was suing; (2) Johnson Tech owned the trademark that Plaintiff alleges is confusingly similar to its own. In fact, in footnote 2 to its complaint, Plaintiff represented that the Defendant internet store PROHEAR was "d/b/a . . . Hangzhou Johnson Tech Co., Ltd." (*See* Dkt. No. 1, at 1 n. 2). And as is obvious from the preceding two paragraphs, Plaintiff and Johnson Tech have been embroiled in administrative proceedings concerning their respective trademarks, here and abroad, for well over a year.

On July 11, 2022, Plaintiff filed the complaint in this action, alleging violations of the Lanham Act, violation of New York General Business Law § 349, and various common law unfair competition and trademark infringement claims. The gravamen of the complaint is that the defendant web sites were selling products that competed with Plaintiff's under a confusingly similar trademark. Notwithstanding the statement in note 2 of the complaint, Plaintiff did not sue Johnson Tech, obtain a summons from the Clerk of Court directed to either Defendant, or make any effort to serve Johnson Tech, which was allegedly doing business as Defendant PROHEAR.

On July 20, 2022, Plaintiff filed an application for the issuance of a TRO. That application went to Part I in the Court's absence, where it was considered and granted *ex parte*, on the understanding that Plaintiff did not know who was behind the two Defendant internet stores and did not know whom to serve. Amazon, which hosts the Defendants' sites, promptly shut them down in compliance with the TRO.

On July 26, 2022, counsel for Johnson Tech appeared on behalf of the two internet stores, which it claimed to "operate." Counsel for Johnson Tech and Defendants explained the history of its dealings with Plaintiff, attaching papers from the TTAB and EUIPO proceedings and providing a link to multiple screen shots that had been submitted to the TTAB in connection with the U.S. trademark challenge. Those screen shots proved that Plaintiff had been aware of the activity of *both* the Defendants' internet stores since April 2021 – some fifteen months prior to the application for the TRO in this case. (*See* Dkt. No. 22, at 11 n. 9). The screen shots that Plaintiff submitted to the TTAB for both the PROHEAR and BOER Tech internet stores' web pages on Amazon.com are dated April 28, 2021. (*See id.; and see* Dkt. No. 30-4).

On July 27, 2022, this Court vacated the *ex parte* TRO and set August 3 as the date for a hearing on an application for a TRO on notice (which is the preferred procedure). I also demanded that counsel for both sides appear so they could explain who knew what when.

On August 3, 2022, the Court held an emergency hearing over Microsoft Teams in conformity with my July 27, 2022, order. At that hearing, counsel for Plaintiff admitted that he had known that Johnson Tech manufactured the hearing protectors that were being sold under the PROHEAR name at the time he told to the Court that he did not know who was behind the Defendants' internet stores. Counsel further admitted that he had submitted screen shots of the

Defendant internet stores' web pages on Amazon.com to the TTAB in connection with the trademark dispute between Plaintiff and Johnson Tech well over a year ago (the date on the screen shots are April 28, 2021). This admission is also in Plaintiff's reply papers. (*See* Dkt. No. 30-4). Counsel justified his decision not to advise the Part I judge about this by pointing to the fact that Amazon had provided him with a name and address for the owners of the Defendant internet stores that turned out not to exist.

**Discussion**

The Court, having read the briefs and the supporting papers and considered the evidence, concludes that a temporary restraining order should not issue, for the following reasons:

A TRO, like a preliminary injunction, may issue only if four conditions are met: the plaintiff must establish that it is likely to succeed on the merits of its claim; that it will be irreparably harmed if a TRO is not put in place; that the balance of equities tips in its favor; and that the public interest will be served by entry of a TRO. *Comprehensive Cmty. Dev. Corp. v. Sebelius*, No. 12 CIV. 0776 PAE, 2012 WL 738185, at *5 (S.D.N.Y. Mar. 7, 2012) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). All four conditions are necessary. *Id.*

The likelihood of success on a Lanham Act trademark claim is measured by what the record reveals about eight factors, known as the Polaroid factors. *See Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 496 (2d Cir. 1961).

The first *Polaroid* factor is the strength of the mark. "'[T]he strength of a mark depends ultimately on its distinctiveness, or its 'origin-indicating' quality, in the eyes of the purchasing public.'" *RiseandShine Corporation v. PepsiCo, Inc.*, --- F.4th ----, 2022 WL 2898794, at *3 (2d Cir. Jul. 22, 2022) (quoting *McGregor–Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1131–32 (2d Cir. 1979)). "The strength of a trademark is assessed based on either or both of two components: (1) the degree to which it is inherently distinctive; and (2) the degree to which it has achieved public recognition in the marketplace, sometimes called acquired strength." *Id.* The mark in this case is arguably "descriptive" – one that "tell[s] something about a product, its qualities, ingredients or characteristics." *See id.* (quotation omitted). The PROTEAR and PROHEAR marks both describe a product related to ear protection ("protect" and "ear" or "hear"). A descriptive mark ranks low on the scale of inherent distinctiveness and is presumptively unprotectable. The mark might turn out to be suggestive – a mark that "suggest[s] (rather than directly describe[s]) the product on which [it is] employed, or its attributes"– but suggestive marks "are the weakest marks that are protectable . . ." and a "finding of suggestiveness does not guarantee a determination that the mark is a strong one." *Id.* at *4 (quotation omitted). If this mark is suggestive, it is "just barely." *Id.* There is further no evidence that the mark has achieved any degree of public recognition in the marketplace or that anyone associates the mark PROHEAR with Plaintiff, as opposed to any other manufacturer. This factor favors Defendants.

The second *Polaroid* factor is the degree of similarity between the two marks. It is hard not to conclude that the marks are similar: not only are the two words are identical but for one letter, but both users print their name in red on black boxes (at least on the packaging that appears on

Amazon, *see* Dkt. No. 30, at 7-8).[1] Moreover both the U.S. and E.U. authorities have ruled that the marks are similar, which is fairly dispositive. Defendants pointed out in the hearing before the Court and in its submissions, Plaintiff argued to the EUIPO that its mark PROTEAR was not visually, aurally, or even conceptually similar to the mark PROHEAR. (*See* Dkt. No. 22-3, at 8-9). In that submission, Plaintiff specifically represented that "the signs are visually similar to a low degree at most." (*Id.* at 9). This is a relevant factor in deciding whether to issue a TRO – but not, as it turns out, in connection with the *Polaroid* factors. Rather, it bears on the balancing of the equities in this case. In light of two administrative findings of similarity, the Court finds that this factor favors Plaintiff.

The third *Polaroid* factor is the proximity of the products in the marketplace. The products themselves (both ear protection devices or "muffs") are extremely similar and are sold in similar fashion over the internet. Proximity favors Plaintiff.

The fourth *Polaroid* factor is the likelihood that the Plaintiff will bridge the gap between the products (*i.e.*, enter a market related to that in which the Defendants sells their product). This factor is not relevant, as the Plaintiff and Defendants already operate in the same market.

The fifth *Polaroid* factor is actual confusion, of which there is no evidence whatever. When pressed, Plaintiff's counsel said his client had told him that one person asked if the PROHEAR hearing protectors were made by Plaintiff, but he was unable to produce any evidence on the point. One inquiry when the products have been in competition in the U.S. marketplace for at least four years is hardly proof that customers are purchasing Defendants' product while intending to purchase Plaintiff's. This factor – or rather, the absence of this factor – favors Defendants.

The sixth *Polaroid* factor is Defendants' good faith in adopting its own mark. The Court infers bad faith, in that the Plaintiff was using the mark years earlier than was Johnson Tech, on what is essentially the same product. Johnson Tech appears to have adopted not only a name that looks similar to Plaintiff's name but also to have adopted trade dress associated with Plaintiff's product (orange and black hearing protectors, trade name in red on a black box). This factor favors Plaintiff.

The seventh *Polaroid* factor is the quality of Defendants' product, and specifically whether it would cause consumers to believe that Plaintiff was producing an inferior product. There is at present no evidence that Defendants' product is in any way inferior to Plaintiff's. This factor favors Defendants.

Finally, the eighth *Polaroid* factor is the sophistication of the buyers. At present the Court knows nothing about who purchases these hearing protectors or for what purpose. The factor favors neither party.

Although the question is close, because the first and fifth factors tip decidedly in favor of Defendants on the record as it exists at this point, I conclude that the Plaintiff has not demonstrated a likelihood of success on the merits.

---

[1] Because we are talking about internet stores, I see no reason why we should be concerned about whether the words PROHEAR and PROTEAR sound alike. Internet stores are places where people make purchases visually, not aurally.

As to Plaintiff's remaining claims, Plaintiff argues in its moving brief that, "Because Plaintiff has established a likelihood of success on the merits of its trademark infringement and counterfeiting claim[s] against Defendants . . . Plaintiff has established a likelihood of success on the merits" of its remaining New York unfair competition and related claims. (*See* Dkt. No. 11, at 14). Following Plaintiff's own argument, because this Court finds that Plaintiff *has not* demonstrated a likelihood of success on its trademark claims, Plaintiff has also failed to establish a likelihood of success on its remaining, related claims.

Plaintiff most definitely has not demonstrated that it will suffer irreparable injury if the Defendants' internet stores are not immediately closed. The proof of the pudding is that Plaintiff has known about the existence of the Defendants for well over a year, and has known that Defendants were selling hearing protectors under the PROHEAR name on Amazon in competition with its own product. Plaintiff's counsel's explanation for why it waited to come to Court to obtain an injunction is that his client made a strategic decision to try to nullify Johnson Tech's trademark first, on the theory that doing so would enhance the likelihood of success on the merits when Plaintiff finally did come to Court. And so it does. But that is only relevant to the ultimate outcome of this case. It does not change the fact that Plaintiff was content to allow these two known internet stores to sell competing hearing protectors, using what Plaintiff now says (at least, to this Court) is a confusingly similar name, for more than a year before coming to Court to obtain injunctive relief. If Plaintiff were truly being injured by Defendants' sales, it did not need to nullify Johnson Tech's trademark in order to seek relief from a Court. Indeed, TTAB's pronouncement does not count for much, since Johnson Tech intends to appeal to this Court from TTAB's determination, and the Court will make the final decision in any event. The passage of time that Plaintiff allowed before coming to Court to obtain injunctive relief demonstrates a lack of irreparable injury. *See Display Technologies, LLC v. Display Industries, LLC*, No. 11 Civ. 6390(WHP), 2011 WL 6188742, at *3 (S.D. N.Y. Dec. 5, 2011) (citing cases).

The balance of equities also tips in Defendant's favor. Here the problem is Plaintiff's lack of candor with the Court when seeking a temporary restraining order, and with E.U. authorities in defending its mark in that forum. Plaintiff may not have known all the particulars about the principals behind the Chinese corporate entities that Amazon said owned the internet stores, but Plaintiff knew full well that the hearing protectors being sold on those sites were manufactured by Johnson Tech and knew full well that Johnson Tech owned the trademark that it now argues is confusingly similar to its own mark. Additionally, while arguing to this court that Johnson Tech's mark was confusingly similar to its own, Plaintiff did not bother to tell this Court that it had represented the opposite to the EUIPO; it insisted in that proceeding that its mark PROTEAR was not visually (or otherwise) similar to Johnson's mark PROHEAR. The differences between EU and U.S. trademark law do not excuse a misrepresentation of fact; similarity of marks is a matter of fact, not law, and the concept of "visual similarity" is the same in France and in New York.

Finally, the public has little interest in this trademark dispute between two Chinese corporations selling competing products over Amazon.

Accordingly, Plaintiff's motion for a temporary restraining order is denied.

The parties have requested 60-90 days for discovery in advance of setting a preliminary injunction hearing. That request is granted, and the parties have until November 4, 2022 to undertake the necessary discovery. The court shortens the period for responding to interrogatories or producing documents from the 30 days provided by the Federal Rules of Civil Procedure to 15 days in view of the short deadline for the completion of discovery. I remind the parties that they must disclose experts and complete expert discovery during this period as well; I set September 28 as the deadline for disclosure of experts and exchange of expert reports, which gives the parties a month to take any expert depositions.

Plaintiff has ten business days to add Johnson Tech as a party defendant, which it said it was going to do. If Plaintiff fails to add Johnson Tech, then Johnson Tech has ten days within which to move for leave to intervene in this action in order to protect its interest in its trademarks.

The parties have agreed to consult and present the court with a possible schedule for further proceedings. I will issue an order setting the date for a hearing on the preliminary injunction and for the filing of direct testimony by affidavit and proposed findings of fact and conclusions of law after I review the parties' suggestions. If the parties are able to merge the preliminary and permanent injunction hearings into one, I encourage it; however, if any party persists in asking for a jury for any claim, we will simply proceed on the preliminary injunction motion.

Finally, I am aware that Johnson Tech wants to move for damages against the bond that issued in connection with the *ex parte* TRO. As I said at the end of our conference, the Court will not consider that motion until the end of the case.

This constitutes the decision and order of the Court.

Dated: August 4, 2022

_____
U.S.D.J.